UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 09-cv-430-WDS-CJP |
| | ) | |
| Sharon Sanders, | ) | |
| | ) | |
| Defendant, | ) | |

**RESPONSE AND OBJECTION TO ORDER TO SHOW CAUSE**

Comes Now Defendant, Sharon Sanders, by and through her attorney, Jerold W. Barringer,  and files this Response and Objection to the Complaint to Enforce Internal Revenue Summons filed by the Petitioner.

1.  Respondent admits the allegations of paragraph 1.

2.  Respondent admits the allegations of paragraph 2.

3.  Respondent assumes that the allegations of paragraph 3 are correct.

4.  Respondent assumes that the allegations of paragraph 4 are correct.

5.  Respondent assumes that all the allegations of paragraph 5 are correct.

6.  Respondent denies the allegations of paragraph 6, and states that she contacted the IRS and arranged the meeting for June 20, 2007.

7.  Respondent states that she appeared at the meeting on June 20, 2007, and

-1-

submitted a CDP request to the IRS with respect to the Lien / Levy action being taken by the IRS at that time, and she stated that such CDP request stayed all activity on her file until that was resolved.  RO Alexander did not dispute that position.

8.  Respondent denies that such a letter was received, however, if one was sent or received, Respondent again asserts that RO Alexander was under the constraints of the CDP process in seeking financial information while also sending the Notice of Federal Tax Lien / Notice of Intent to Levy with its procedural protections of Respondent.

Respondent further objects to the request to enforce the summons, and the request for a final judgment, and the request for damages.  Respondent submits the following.

## Background

The IRS, through its revenue officer, Arlie Alexander, has submitted a declaration seeking production of documents, appearance and testimony from the Respondent, Sharon Sanders.  In paragraph 5 of the complaint, it is alleged that Respondent failed to appear on June 15, 2007, but did appear on June 20, 2007 at the IRS offices in Decatur, Illinois.  Decatur, Illinois is in the central district of Illinois. No fact has been submitted in any declaration that June 15, 2007 was an intentional or improper failure to appear.

On June 20, 2007, Respondent did appear in Decatur, Illinois, and submitted a Collection Due Process (CDP) Request for hearing on the matter. That resulted in a stay of collection as to any other matters, and eliminated the obligation to produce any materials on June 20, 2007. Petitioner does not deny that such is the law and facts of the case.

Furthermore, the Petitioner has not demonstrated that Respondent has been uncooperative in compliance with the summons. Rather, Petitioner argues that Respondent should be required to appear because Petitioner sent an additional letter during the CDP hearing process seeking an alternative date for appearance on the summons.

## Issues in the Case

First, is this a basis for requiring a complaint and a potential rule to show cause why Respondent should not be compelled to comply with the summons.

As stated in this document, and when reviewing the Declaration of Arlie Alexander which is Exhibit A to the Complaint to Enforce Internal Revenue Summons, it is clear that Respondent appeared at the Decatur, Illinois office and gave a legal basis for why she was not required to comply because of an ongoing CDP process. The Declaration does not contain the allegations found in paragraph 8 of the complaint, nor does it support the allegation that Respondent intentionally failed to

appear at a June 15, 2007 meeting without contacting RO Alexander, or without setting up an additional meeting.

Nor does the complaint allege that Respondent has been notified of a new date to appear, and has failed to appear at that time. The complaint alleges that Respondent has been uncooperative, yet submits no facts to support that statement. Rather, it appears that the complaint simply alleges that Respondent has failed to comply with the summons with unsupported claims of Respondent being uncooperative.

26 U.S.C. Sec. 7604 sets forth standards and goals in determining whether anyone has failed to comply with a summons. The Declaration of RO Alexander does not support that legal position that such an Order be issued at this time. The Declaration does not set forth that RO Alexander had contacted Respondent after the completion of the CDP process and the Tax Court process, to reschedule such a hearing on the summons. As a result, the Petitioner has not taken all necessary administrative steps prior to the initiation of this litigation, contrary to the assertions of the declaration.

Rather, a notice to appear at a new hearing on the summons, sent to Respondent and to the power of attorney, would be the proper, logical and correct legal procedure at this time. Orders to compel should not be used merely to return to

the request to appear as directed by the summons.

Second, does the IRS have the authority to issue a summons at this date.

One of the problems logistically for Petitioner is that as a result of the Reform and Restructuring Act of 1998, the Petitioner eliminated district directors, directors of regional service centers, and Internal Revenue districts.  That process was completed no later than October 7, 2000.  Petitioner was not required by the RRA to take such actions.  Rather, the IRS made the decision to eliminate the positions without regard to what was stated in the statutes and regulations.  26 U.S.C. Sec. 7601, and its regulations,  makes it clear that the Commissioner, through his district director, is to canvas the district to determine who should be contacted to correct a form, or make a form if none exists, and to take actions to attempt to collect taxes.

The district referred to by statute and regulation is a district which has not existed since October, 2000 through a procedure implemented by the Commissioner. This is as a result of the Petitioner's own actions, not any actions of the Respondent. Nor is this the district referred to in Sec. 7604, which refers to the district court for the district where the taxpayer resides.  That is a district under 28 U.S.C. Sec. 93(c).

The district referred to is the internal revenue district, which is still listed in the general regulation for the Internal Revenue Service.  *See* 26 CFR 601.101.  That regulation, dated as recently as April 1, 2008, states in part, ..."Within an internal

revenue district the internal revenue laws are administered by a district director of internal revenue."... Here again, it is clear that the statutes and regulations refer to an office, a person and a territory that no longer exists. It is within that territory that a canvassing is supposed to occur in the process of gathering information. Since the person, office and territory do not exist, the Petitioner has self-eliminated its ability to force Respondent to appear and answer questions or provide information.

Third, the Petitioner seeks to compel information from the Respondent. Does the Petitioner have the authority to make such compulsion. In looking at the form demanded, and in looking at that form's application, the answer should be no.

On August 3, 2004, the Department of Treasury submitted a Paperwork Reduction Act Submission (PRA) to the Office of Management and Budget (OMB). Similar applications have been submitted previously. The PRA Submission is submitted by federal agencies who are seeking information for the government. Several Courts have discussed the meaning and intent of the PRA.

The 10th Circuit, in *Pond v. CIR*, 211Fed. Appx. 749, WL 18928 (10th Cir. 2007), an unpublished decision, held:

> Pond suggests that he cannot be penalized for failing to file the 1040, because the 1040 is a collection of information covered by the Paperwork Reduction Act. He contends the 1040 bears neither of the items required by the Act: 1) a valid control number assigned by the

Office of Management and Budget (OMB), or 2) proper notice that a person is not required to respond unless a valid control number is displayed. <u>The Tax Court found Pond's arguments frivolous, addressed neither argument, and threatened him with future sanctions for bringing similarly frivolous arguments in subsequent proceedings</u> **The Supreme Court, however, has made clear that tax forms such as the 1040 are information collection requests within the meaning of the Act**. *Dole v. United Steelworkers of America*, 494 U.S. 26, 33 (1990) ("Typical information collection requests include tax forms, medicare forms, financial loan applications, job applications, questionnaires, compliance reports, and tax or business records. These information requests share at least one characteristic: The information requested is provided to a federal agency, either directly or indirectly.") (internal citations omitted); *see United States v. Collins*, 920 F.2d 619, 630 n.12 (10th Cir. 1990). Therefore, we need to ask whether the 1040 is excepted from the two requirements set out above in 44 U.S.C. § 35122 and, if not, whether the 1040 complies with those requirements. But Pond did not include any of the 1040 Forms.  (Emphasis added).

On September 25, 2007, the 10th Circuit published their decision in U.S. v.

Chisum, 502 F.3d 1237 (10th Cir.2007) which under *Anders v. California*, 386 U.S.

738 (1967) held:

"C. The Paperwork Reduction Act (PRA)

The PRA, 44 U.S.C. § 3501-20, **precludes the imposition of any penalty against a person for "failing to comply with a collection of information" if either (1) it "does not display a valid control number" or (2) the agency fails to alert the person that he or she "is not required to respond to the collection of information unless it displays a valid control number." 44 U.S.C. § 3512(a). A § 3512(a) defense may be raised at any time. See id. § 3512(b). Tax forms are covered by the PRA. See Dole v. United Steelworkers of Am., 494 U.S. 26, 33 (1990).**
Mr. Chisum contends that "[s]ince there was no proof that Form 1040

-7-

was a lawful form under the [PRA], the trial court erred in failing to grant [his] request [at the sentencing hearing] to dismiss the indictment." Aplt. Br. at 29. **But the PRA protects a person only "for failing to file information**. It does not protect one who files information which is false." Collins, 920 F.2d at 630 n.13 (internal quotation marks omitted). The charges against Mr. Chisum were predicated on the filing of false information, not the failure to file. He is therefore not entitled to relief." (Emphasis added).

Therefore, it is clear that the PRA applies to tax forms.  The Petitioner in this action is seeking "it is necessary to obtain the testimony and to examine the documents, records, or other data sought by the summons in order to properly collect the federal tax liabilities of Sharon Sanders for the calendar years ending December 31, 1994, December 31, 1995, December 31, 1996, and December 31, 1997." Petitioner seeks the collection of information, something specifically covered by the PRA as stated by the Supreme Court in *Dole*.   So, how does the PRA apply.

P.L. 104-13(1995), pg. 206-207 USCCAN- 1Congress explained the difference between the 1980 and 1995 mandated requirements to be displayed on each request for information, on each "collection of information":

"Section 3506(c) mandates a detailed information collection evaluation procedure requiring each agency to establish a process within the office designated under subsection (a), independent of program responsibility, to evaluate proposed collections. This office must: Review a collection of information before it is submitted to OMB for review, that includes making an independent evaluation of its need; preparing a description of it, a collection plan, and a burden estimate; pilot testing the

-8-

collection, if appropriate; and developing a plan for the management and use of the information to be collected; **Ensure that information collections are inventoried, display a control number and, when appropriate, an expiration date; indicate the collection is in accordance with the Act; and CONTAIN a statement informing the person being asked why the information is being collected, its use, its burden, and whether responses are voluntary, required to obtain a benefit, or mandatory**. This requirement is transposed from current law (section 3504(c)(3)) to make it more clearly an agency responsibility, rather than a duty of OMB. Note that this requirement must also be certified to by each agency (see section 3506(c)(3)(F); and Assess the information collection burden of proposed legislatio affecting the agency." (Emphasis added).

44 U.S.C. section 3506(c)(1)(B)(1995) provides:

   (i)    inventoried, displays a control number and, if appropriate, an expiration date;

   (ii)   **indicate the collection is in accordance   with the clearance requirements of section 3507**; (Emphasis added) and;

   (iii)  informs the person receiving the collection  of information of;

          (I) the reasons the information is being collected;
          (II) the way such information is to be used;
          (III) an estimate, to the extent practicable, of the burden of the collection;
          (IV) whether the responses to the
          collection of information are voluntary, required to obtain a benefit, or mandatory; and
          (V) the fact that an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number.

These same provisions are included in the Code of Federal Regulations.  5

C.F.R. 1320, *et seq.*, describes and details all that is required for approval of a form,

and the notices that the form must provide to the recipient of or respondent to the form.  5 C.F.R. Sec. 1320.1, the purpose states that the regulations are to implement the PRA of 1995.   The Director shall promulgate the rules, regulations and procedures necessary for implementation.  (5 C.F.R. Sec. 1320.1) The PRA and the regulations apply to all agencies except the General Accounting Office and the Federal Election Commission (5 C.F.R. Sec. 1320.3).   Pursuant to the definition section, obtaining or collecting information and attempting to conduct an information collection are defined, and would include a tax form. [5 C.F.R. Sec. 1320.3(c)] and (5 C.F.R. Sec. 1320.3d).  The definition of collection of information is found at 5 C.F.R. Sec. 1320.3(c).   This definition is lengthy and contains numerous examples, however, separate instructions that may apply to a collection of information are not included in the definition of collection of information.

5 C.F.R. Sec. 1320.5(a), in pertinent part,  makes clear that "[a]n agency shall not conduct or sponsor a collection of information unless, in advance of the adoption or revision of the collection of information–

(1)   The agency has–
(i)   Conducted the review required in Sec. 1320.8; ...,
(iii)  Submitted to the Director, in accordance with such procedures and in such form as OMB may specify,
(A) The certification required under Section 1320.9,
(B) The proposed collection of information in accordance with Sec. 1320.10, Sec. 1320.11, or Sec. 1320.12, as appropriate,

(C) An explanation for the decision that it would not be appropriate, under Sec. 1320.8(b)(1), for a proposed collection of information to display an expiration date;..."

Further, 5 C.F.R. Sec. 1320.5(b), states, "[i]n addition to the requirements in paragraph (a) of this section, an agency shall not conduct or sponsor a collection of information unless:

(1) The collection of information displays a currently valid OMB control number; and,

(2)(ii) The agency informs the potential persons who are to respond to the collection of information that such persons are not required to respond to the collection of information unless it displays a currently valid OMB control number, ...".

5 C.F.R. Sec. 1320.6(a) is the public protection regulation.   It states, "[n]otwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to the requirements of this part if:

(1) The collection of information does not display, in accordance with Sec. 1320.3(f) and Sec. 1320.5(b)(1), a currently valid OMB control number assigned by the Director in accordance with the Act; or

(2) The agency fails to inform the potential person who is to respond to the collection of information, in accordance with Sec. 1320(b)(2), that such person is note required to respond to the collection of information unless is displays a currently valid OMB control number.

(b) The protection provided by paragraph (a) of this section may be raised in the form of a complete defense, bar, or otherwise to the imposition of such penalty at any time during the agency administrative

-11-

process in which such penalty may be imposed or in any judicial action applicable thereto.

5 C.F.R. Sec. 1320.8 describes the Agency's collection of information responsibilities and obligations.  5 C.F.R. Sec. 1320.8(b) states that "[s]uch office shall ensure that each collection of information:

> (1) Is inventoried, displays a currently valid OMB control number, and, if appropriate, an expiration date;
> (2) Is reviewed by OMB in accordance with the clearance requirements of 44 U.S.C. Sec. 3507; and
> (3) Informs and provides reasonable notice to the potential persons to whom the collection of information is addressed of--
> > (i) the reasons the information is planned to be and/or has been collected;
> > (ii) the way such information is planned to be and/or has been used to further the proper performance of the functions of the agency;
> > (iii) an estimate, to the extent practicable, of the burden of the collection, ...;
> > (iv) whether the responses to the collection of information are voluntary, required to obtain a benefit, (citing authority) or mandatory (citing authority);
> > 
> > (v) the nature and extent of confidentiality to be provided, if any (citing authority); and,
> > (vi)  the fact that an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number.

The place where this information shall be included is described in 1320.8(c)(1)(i).  That information must be included in the form, unless an instruction

to the form is attached to, and part of the form[1].  Such is not the case for the Form 1040.  In fact, the Form 1040 does not refer to the instruction booklet at all, but merely states, "For Privacy Act and Paperwork Reduction Act Notices, See page 7, (for the 1996 Form 1040).  No such page exists on the 1996 Form 1040.

Finally, the Agency (IRS) must provide a certification that all of the above have been met, or if not met, why it was not possible to meet all of the above requirements.  5 C.F.R. Sec. 1320.9, states in pertinent part as follows:

> As part of the agency submission to OMB of a proposed collection of information, the agency (through the head of the agency, the Senior Official, or their designee) shall certify (and provide a record supporting such certification) that hte proposed collection of information–
> (g) Informs potential respondents of the information called for under Sec. 1320.8(b)(3)...

An 83-I application and certification, which can be found at www.whitehouse.gov/omb has the following information contained on the form:

> Section 19.  Certification for Paperwork Reduction Act Submissions
> On behalf of this Federal agency, I certify that the collection of information encompassed by this request complies with 5 C.F.R. 1320.9.
> The following is a summary of the topics, regarding the proposed collection of information, that the certification covers: .... (g) It informs he respondents of the information called for under 5 C.F.R. 1320(8)(b)(3):
> ...  If you are unable to certify compliance with any of these provisions, identify the item below and explain the reason in Item 18 of the Supporting

---

[1]Examples of such an included instruction can be found on the IRS website, www.IRS.gov with the W-4, and its included instruction.

Statement.

The federal agency involved in this case, the Internal Revenue, has submitted five 83-I's since the inception of the PRA of 1995, (1998, 2001, 2004, 2005 and 2008)[2].  At no time did the IRS include any information in the "identify below" category described above, and as to Item 18 in the support statement, the question and answer are as follows: "EXCEPTIONS TO THE CERTIFICATION STATEMENT ON OMB FORM 83-I Not applicable."

What this then demonstrates is undeniable.  The statutes, and in particular the regulations, require certain disclosures (5 CFR 1320.8(b)(3)) to be on the "collection of information", what is referred to as the "IT".  What is equally clear is the "collection of information" can only be the Form 1040 with respect to the issues in this case.  Further, it is clear that the information is not on the Form 1040.  Finally, what is clear is that the instructions are not a part of the Form, inseparable and viewed as a part of the Form 1040.  All Courts have uniformly held that the instruction booklets are not governed by the PRA,  *See Salberg v. United States*, 969 F.2d 379 (7th Cir. 1992).

The regulations have the force and effect of law.  The regulations require

---

[2]It is believed that no 83-I application was submitted at the end of 1995 as a result of then-President Clinton shutting down government over budget disputes for fiscal year 1996.

certain information be contained on the "collection of information" forms. That required information is not disclosed on the "collection of information" form 1040. The instructions cannot contain that information unless the instructions are part of the form. The instructions are not part of the "collection of information" 1040 form. The certification on the application for the 83-I for the "collection of information" form certifies that the "collection of information" form 1040 contains the required information as stated by the regulations. The certification on the application for the 83-I for the "collection of information" form 1040 is false, and the form displaying OMB number #1545-0074, based upon that false certification is not issued in accordance with the Paperwork Reduction Act of 1995. The OMB number would then not be a "currently valid OMB control number". The form fails to include the necessary information, and by failing to include that information, and by the false certification, the form 1040 would be a bootleg, invalid form. See *Dole v. United Steelworkers*, 498 U.S. 26, 32 (1990).

At the end of the supporting documents, page 25 to the 83-I PRA submission for 2004, the IRS added the following:

Note: The following paragraph applies to all of the collections of information in this submission:

An agency may not conduct or sponsor, and a person is not required to respond

to, a collection of information unless the collection of information displays a valid OMB control number.  Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law.   Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

The last page of the 83-I PRA submission for 2004 for the Form 1040 is a 3/4 page statement of why the IRS should not be forced to include an expiration date on the Form 1040.  In other words, everything the IRS has done with respect to this 83-I, including the fact that such a form was even required to be filed for the Form 1040, demonstrates that the Form 1040 must comply with the PRA.

As has already been shown, the Form 1040 does not comply with the PRA. The IRS has provided no additional information as to what other form would be required to be filed.  The IRS has provided no other form that Respondent would be required to use to identify any potential tax liability.  In other words, the IRS has failed to meet the applicable standards of the PRA as to the Form 1040, and as such, made the Form 1040's OMB number invalid.  This then requires reviewing the OMB statement above, "An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid OMB control number."   The IRS is not entitled to seek such information, and Respondent is not required to comply since the IRS initially failed

to comply with the disclosure requirements of the PRA as to the Form 1040.

Fourth, the issue of assessment and collection also falls to the problem of no district director, no district, no director of regional service center; therefore, no valid assessment officer.  The details of this issue are as follows:

Assessments occur after the issuance of  the Notices of Deficiencies, and the next step after the relevant time periods had passed would be to make an assessment of the taxes then deemed due and owing.  Yet, the question is, who makes the assessment, and that is covered by 26 U.S.C. Sec. 6203, and 26 C.F.R. 301.6203-1.  The assessment occurs by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary.  *Sec. 6203*.

26 C.F.R. 301.6203-1, reads as follows:

The district director and the director of the regional service center shall appoint one or more assessment officers.[3]   The district director shall also appoint assessment officers in a Service Center servicing his district.  The assessment shall be made by an assessment officer signing the summary record of assessment.  The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period, if applicable, and the amount of the assessment.  The amount of the assessment shall, in the case of tax shown on a return by the taxpayer, be the

---

[3]

First of all, it should be noted that there appear to be assessment officers located in two separate places, the first of which is appointed by the district director, together with the director of the regional service center; remembering that neither of these positions has existed since at least October, 2000.  The second by the District Director for his district.

amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record.  The date of the assessment is the date the summary record is signed by the assessment officer.  If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed.

Within this language are numerous problems for the Petitioner.  First, it appears that both the district director and the director of the regional service center must, *together*, appoint one or more assessment officers.  Second, the district director  is required to appoint an assessment officer in the service center serving his district.  Third, the assessment officer must sign the summary record of assessment in order for there to be a valid assessment.  It is known that this summary record of assessment is either in the form of a Manual Form 23C, or a computer record RACS006.  See *March v. IRS*, 335 F.3d 1186, 1188 (10th Cir. 2003); See also, *Goodman v. United States of America*, App. No. 05-1440, decided June 21, 2006 (10th Cir. 2006).

The problems with the first two points are simple and straightforward.  There is no district director and no director of the regional service center.  If no such officers exist, then there can be no assessment officers, and pursuant to 26 U.S.C. Sec. 6301, there is no district director to collect any tax.  See 26 C.F.R. 301.6301-1.  If there is no assessment officer, there can be no valid assessment.  The statute and regulations use the words "shall" or "shall also" or "shall provide".  In other words,

-18-

there must be a district director and a director of the regional service center, and those individuals must appoint an assessment officer, who must sign the summary record of assessment, in order for any assessment to be valid, or the district director must appoint a separate assessment officer, who then must sign the summary record of assessment in the district where the district director is located, not in some far-flung region of the country having no relationship to the taxpayer or the district director.

If there has been an assessment made by an assessment officer, but not an assessment officer appointed by the director of the regional service center and/or by the district director, then the assessment would not be valid pursuant to the specific statutes and regulations governing such assessments. Even if the debt could not be challenged, the process by which the debt could be collected can be challenged. That is what the Respondent is doing in this instance.

Even assuming Petitioner can surpass this fundamental statutory problem, the last step is to consider whether there is a proper Federal Tax Lien (lien) in order to have a proper levy on the lien.

A Federal Tax Lien arises by operation of law as a result of a valid assessment, with the 10 day notice included, at which time the taxpayer fails to pay or chooses to ignore the assessment notice. That means the assessment must be valid for the federal tax lien to be valid. Here, the assessment falls into a period of time, where there is

a strong and likely outcome that the assessment was not valid.[4]

There has also been a Notice of Federal Tax Lien between these two parties in this case.  While a tax lien may arise by operation of law, the Notice of Federal Tax Lien, and the legality of its priority, is governed by state law.  In particular in Illinois, the Federal Lien Registration Act, found at 770 ILCS para. 110/1, *et seq.,* governs the filing of federal liens.

770 ILCS para. 110/2(a), states that "notices of liens, certificates and other notices affecting federal tax liens must be filed in accordance with this Act."  770 ILCS para. 110/3, concerning Certification of notices states, "Certification of notices of liens, certificates or other notices affecting federal liens by the Secretary of the Treasury of the United States or his delegate, or by any official entity of the United States responsible for filing or certifying or notice of any other lien, entitles them to be filed and no other attestation, certification or acknowledgement is necessary."

A Notice of Federal Tax Lien (Form 668(Y)(c)) referring to Respondent allegedly was prepared on June 5, 2007, serial number 369056007.  However, at least three problems exist with this document.  First, it states "This notice was prepared

---

[4]Any assessment, or any Notice of Federal Tax Lien generated between January, 2001 and the end of 2007 falls into that period of time when there was no district director, which calls into question all actions taken by the Respondent based upon the need for an assessment officer or based upon the need for collections.  Without the district director, it appears that nothing more could occur.

and signed at St. Paul, MN, on this, the 05th day of June, 2007.  A signature of "R. A. Mitchell" for "Arlie Alexander" appears on the document.  Arlie Alexander, the Revenue Officer and Declarant in this case, is located in Decatur, Illinois, as is demonstrated by his telephone number (217) 429-9763 x1030.

The document says it was prepared and signed in St. Paul, MN.  Arlie Alexander was in Decatur, Illinois.  It is now known that "R.A. Mitchell", is in fact Renee Mitchell, who is based in Covington, Kentucky.  She was not in St. Paul, MN on June 5, 2007, so the first problem was that the document was not signed, and probably was not prepared in St. Paul, MN.

Second, the form says that R.A. Mitchell was signing the document for Arlie Alexander, but R.A. Mitchell is not a subordinate to Arlie Alexander.  In fact, R.A. Mitchell does not have any real connection to Arlie Alexander, except that they both work for the Internal Revenue Service.  So, the second problem with the form is that R.A. Mitchell is not in a position to sign on behalf of Arlie Alexander.

Third, Renee (R.A.) Mitchell has never seen this, or any document, which allegedly bears her signature.[5]  This notice is treated as a certification, which under

_____

[5]R.A. Mitchell was deposed on April 2, 2009, at the U.S. Attorney's Office in Cincinnati, Ohio, across the Ohio River from Covington, Kentucky.  While under oath, she stated quite clearly that she has never seen any of the Notices of Federal Tax Lien which contain her signature.  She believes the number of such documents are in the hundreds of thousands of such Notice of Federal Tax Liens.

Illinois law, means that the person who signed it knows, or at least believes, that the information contained therein is true and correct.  R.A. Mitchell has no idea, having never seen the document, whether it is true and correct or not, and the document is not signed by Arlie Alexander for R.A. Mitchell; it was signed by R.A. Mitchell for Arlie Alexander.

Fifth, and finally, if R.A. Mitchell has never seen the document, how did she sign it?[6]  R.A. Mitchell has admitted that she does not physically sign the documents. Her "signature" is contained in a computer and "printed" onto forms.  That is not a signature which is physically placed upon the document, as is represented by the Notice of Federal Tax Lien filed by Petitioner against Respondent.   The document is held out to be a form which was prepared and signed by a particular person.  That did not happen.

Even if someone else allegedly prepared the document, the "signing" of the document is a certification that the person who "signed" it knows that the information contained therein is true.  Here, that is not the case.  R.A. Mitchell does not know if the information is true and correct, because she has never seen the document.  Arlie Alexander did not sign the document, so he has not attested to the fact that the

---

[6]In fact, R.A. Mitchell also announced that she has never physically signed any such Notice of Federal Tax Lien.  Apparently, her signature is held in a computer, which "signature" is then "printed" onto these forms.  It is not signed, and R.A. Mitchell never saw the document.

information contained in the document is, in fact, true.  No authorized person has stated that the information is true and correct, because no such authorized person has signed the document.  So, there has been no valid "signing", and hence, no valid "certification".   In addition, no other person is mentioned as having prepared the form.

Without that proper "signing" or "certification", the Notice of Federal Tax Lien should not have been recorded at the Fayette County Courthouse.  Without such a proper "signing", there is no "entitlement that the document be filed".  There is no proper signing, and there is no proper attestation, certification or acknowledgment on the Notice of Federal Tax Lien.  The Notice of Federal Tax Lien is not valid.

If the Assessment is not valid, as it appears not to be valid, then there is no proper federal tax lien which arose by operation of law.  However, even if that issue is beyond the reach of this court, at this time, it is clear that the Notice of Federal Tax Lien is also not valid under Illinois law.

## Conclusion

There are a number of problems with respect to this case.  First, is this the proper time to take this action.  Second, does the Petitioner have the proper form to pursue this action.  Third, is the Petitioner using the proper forms.  Fourth, has there been a proper assessment, since without an assessment, no tax would be due and

owing.  Finally, is there also a valid and proper Notice of Federal Tax Lien because of problems with the assessment and because of problems inherent with the lien itself. As Respondent has demonstrated, Petitioner is not entitled to relief on the Complaint at this time, and requests the Court dismiss this matter accordingly.

Dated November 6, 2009.

Sharon Sanders, Respondent,

By:   /s/ Jerold W. Barringer
Jerold W. Barringer
Attorney at Law
200 W. Front Street, P.O. Box 213
Nokomis, IL 62075
(217) 563-2646

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the following individual, Laura Jones, Assistant U.S. Attorney, Nine Executive Drive, Fairview Heights, IL 62208, by CM/ECF filing on the 12th day of November, 2009.

/s/ Jerold W. Barringer